THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NUMBER:

COLONY INSURANCE COMPANY,
a Virginia corporation

        Plaintiff,

vs.

TRINTEC CONSTRUCTION, INC., a Florida
corporation, and COUNTRYSIDE VILLAGE
CONDOMINIUM ASSOCIATION, INC.,

        Defendants.

_____/

FILED by _KAL_ D.C.

MAR 1 2 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## COMPLAINT FOR DECLARATORY RELIEF

      Plaintiff, Colony Insurance Company, sues the Defendants, Trintec Construction, Inc. and Countryside Village Condominium Association, Inc., for declaratory relief. In support of this Complaint for Declaratory Relief, Colony Insurance Company alleges:

### JURISDICTIONAL ALLEGATIONS

      1.     This is an action for declaratory relief under an insurance policy pursuant to Chapter 86 of the Florida Statutes, 28 U.S.C. §2201, and Federal Rule of Civil Procedure 57.

      2.     The jurisdiction of this Court is based on diversity of citizenship and the amount in controversy pursuant to 28 U.S.C. §1332. This is an action between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of attorneys' fees, interest, and costs.

      3.     Colony Insurance Company (hereafter "Colony") is an insurance company incorporated under the laws of Virginia with its principal place of business in Richmond, Virginia.

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

---

4.     Trintec Construction, Inc. (hereafter "Trintec") is a profit corporation incorporated under the laws of Florida with its principal place of business in Opa Locka, Florida.

5.     Countryside Village Condominium Association, Inc. (hereafter "Countryside") is a non-profit corporation incorporated under the laws of Florida with its principal place of business in Hialeah, Florida.

## VENUE ALLEGATIONS

6.     Venue is proper in this district because the events giving rise to this suit occurred in this district.

## SUBSTANTIVE ALLEGATIONS

7.     Trintec contracted with Countryside to perform roofing and siding work at Countryside's condominium property located in Miami-Dade County, Florida.

8.     Trintec commenced work under the contract with Countryside on or about August 1, 2005, and Trintec subsequently demobilized without completing the contracted work sometime in early 2006 due to Countryside's failure to pay for the work performed.

9.     Trintec then sued Countryside to recover money owed for the work performed.

10.     In response, Countryside counterclaimed against Trintec, asserting three causes of action: (1) fraudulent construction lien; (2) slander of title; and (3) breach of contract. A copy of Countryside's Counterclaim is attached as Exhibit A. The allegations of the Counterclaim are incorporated in and made a part if this Complaint for Declaratory Relief.

11.     The fraudulent lien and slander of title claims are premised on the allegation that the lien filed by Trintec included claims for work not performed and materials not furnished with

2

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

respect to sheets of wood allegedly used to repair rot damage. In addition, Countryside also alleges that the lien amount was inflated by Trintec's pricing practices.

12.     The breach of contract claim is premised on the allegation that Trintec performed deficient and shoddy work that resulted in "severe water intrusion and substantial, ongoing damages to the association and its residents, shoddy and substandard work, lost use and distress."

13.     Colony issued four Commercial General Liability Insurance Policies (Policy Nos.: GL3156900A, GL3156900B, GL3156900C, and GL3156900D) to Trintec. The insurance policies were collectively in effect from April 10, 2004, to April 10, 2008.

14.     Since Trintec's work did not commence until August 1, 2005, Policy GL3156900A does not apply to Countryside's claims. As such, copies of Policies GL3156900B, GL3156900C, and GL3156900D are attached as Exhibits B, C, and D, respectively. The terms of these policies are incorporated in and made a part of this Complaint for Declaratory Relief.

15.     In response to Countryside's Counterclaim, Trintec belatedly made a claim for liability coverage under the policies issued by Colony.

16.     Colony has responded by affording Trintec a defense against the claims asserted against it under complete reservations of rights. Copies of the Written Notice of Reservation of Rights and Supplemental Reservation of Rights are attached as Exhibits E and F, respectively. The content of these reservations of rights are incorporated in and made a part of this Complaint for Declaratory Relief.

17.     The policies issued by Colony contain certain pertinent provisions, exclusions, and conditions of coverage.

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

18.     The provisions of Coverage A of the Insuring Agreement of Section I states in

pertinent part:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.      Insuring Agreement**

**a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**      The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)**      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

**b.**      This insurance applies to "bodily injury" and "property damage" only if:

**(1)**      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**      The "bodily injury" or "property damage" occurs during the policy period; . . .

4

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

19.     The Exclusions provisions of Section I – Coverage A of the policies provide in pertinent part:

2.      Exclusions

This insurance does not apply to:

**a.      Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

|   *   |   *   |   *   |

**j.      Damage To Property**

"Property damage" to

|   *   |   *   |   *   |

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

|   *   |   *   |   *   |

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

|   *   |   *   |   *   |

**l.      Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically    Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

20.    The provisions of Coverage B of the Insuring Agreement of Section I states in pertinent part:

**SECTION I – COVERAGES**

*                          *                          *

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

---

(1)     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

b.     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

21.     The Exclusions provisions of Section I – Coverage B of the policies provide in pertinent part:

2.     **Exclusions**

This insurance does not apply to:

a.     **Knowing Violation Of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b.     **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

            *                    *                    *

f.     **Breach Of Contract**

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

---

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

22.    The Commercial General Liability Conditions of the insurance policies issued by Colony provide in pertinent part:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\*               \*               \*

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**    How, when and where the "occurrence" or offense took place;

**(2)**    The names and addresses of any injured persons and witnesses; and

**(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**    If a claim is made or "suit" is brought against any insured, you must:

**(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**    You and any other involved insured must:

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

23.    The Definitions section of the policies provide in relevant part:

**SECTION V – DEFINITIONS**

        *             *             *

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

        *             *             *

8.    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

b.    Your fulfilling the terms of the contract or agreement.

\*        \*        \*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.    False arrest, detention or imprisonment;

b.    Malicious prosecution;

c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.    Oral or written publication, in any manner, of material that violates a person's right to privacy;

f.    The use of another's advertising idea in your "advertisement"; or

g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*        \*        \*

16.    "Products-completed operations hazard":

a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

10

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned. However, "your work: will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.

(b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. . . .

17.     "Property damage" means:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

18.     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. . . .

            *                    *                    *

22.     "Your work":

a.      Means:

11

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

---

**(1)**    Work or operations performed by you or on your behalf; and

**(2)**    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

**(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)**    The providing of or failure to provide warnings or instructions.

24.    The Open Roof Coverage Limitation Endorsement (Form U007-0702) to the policies provides in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OPEN ROOF COVERAGE LIMITATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.    SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

**Open Roof and Heating Equipment**

This insurance does not apply to "property damage" arising out of or resulting from:

**(1)**    an "open roof".

This exclusion does not apply if:

**(a)**    such "open roof" is covered with suitable waterproof material at the time of loss; and

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

---

**(b)**     such suitable waterproof material has been secured to the
structure; . . .

**B.      SECTION  V  –  DEFINITIONS**  is  amended  and  the
following added:

"Open roof" means any roof or section of a roof where the
protective covering (shingles, tar, felt paper, etc.) has been removed
leaving the shell of the structure exposed.

ALL  OTHER  TERMS  AND  CONDITIONS  OF  THE  POLICY
REMAIN UNCHANGED.

25.     The Exclusion – Exterior Insulation And Finish Systems Endorsement (Form CG

21 86 12 04) to policies GL3156900C and GL3156900D provides in pertinent part:

**THIS  ENDORSEMENT  CHANGES  THE  POLICY.  PLEASE
READ IT CAREFULLY.**

**EXCLUSION  –  EXTERIOR  INSULATION  AND  FINISH
SYSTEMS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**     This insurance does not apply to "bodily injury", "property
damage" or "personal and advertising injury" arising out of,
caused by, or attributable to, whether in whole or in part, the
following:

**1.**     The  design,  manufacture,  construction,  fabrication,
preparation, distribution and sale, installation, application,
maintenance  or  repair,  including  remodeling,  service,
correction or replacement, of any "exterior insulation and
finish system" or any part thereof, or any substantially
similar system or any part thereof, including the application
or  use  of  conditioners,  primers,  accessories,  flashings,
coatings, caulking or sealants in connection with such a
system; or

**2.**     "Your product" or "your work" with respect to any exterior
component, fixture or feature of any structure if an "exterior

13

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.**     The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.**     A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.**     The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.**     A reinforced or unreinforced base coat;

**4.**     A finish coat providing surface texture to which color may be added; and

**5.**     Any flashing, caulking or sealant used with the system for any purpose.

26.     The Contractors Coverage Limitations Endorsement (Form U008R-0702)) to policy GL3156900D provides in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CONTRACTORS COVERAGE LIMITATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY
COVERAGE PART

\*                              \*                              \*

**B.     SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

14

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

This insurance does not apply to:

**Subcontractors and Independent Contractors**

"Bodily injury", "property damage", or "personal and advertising injury":

(1)     arising out of or resulting from the acts of your independent contractors or subcontractors unless you:

(a)     obtain certificates of insurance that evidence coverage and Limits of Insurance equal to or greater than the coverages and Limits of Insurance provided by this policy in force for the term of the work performed for you; and

(b)     provide us upon our request copies of Certificates of Insurance that you shall require and have obtained from your subcontractors before any work performed on your behalf. You shall maintain copies of these Certificates during and up to 5 years after the term of such work; . . .

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

27.     It is Colony's position that these terms of the policies limit and/or exclude coverage for Countryside's claims.

28.     However, both Trintec and Countryside have taken the position that there is insurance coverage under the policies issued by Colony.

29.     As such, there is a current and genuine dispute between the parties as to their respective rights and obligations under the policies.

## COUNT I – TRINTEC BREACHED THE CONDITIONS OF THE POLICIES

30.     Paragraphs 1 through 18, 22 through 23, and 27 through 29 are reasserted and incorporated into this Count.

31.     Countryside's Counterclaim was served on Trintec on February 29, 2008.

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

32.     Prior to January 12, 2010, Trintec neither notified Colony of Countryside's claims and Counterclaim nor forwarded a copy of the Counterclaim to Colony. A copy of Trintec's "notification" letter is attached as Exhibit G.

33.     Instead of timely notifying Colony of the claims and Counterclaim, Trintec engaged its own counsel and actively defended against the Counterclaim. Thus, Trintec has incurred costs and expenses without Colony's consent.

34.     Trintec's failure to timely notify Colony of Countryside's claims and Counterclaim and Trintec's failure to immediately send a copy of Counterclaim to Colony constitute breaches of the conditions of the policies.

35.     Trintec's breaches have prejudiced Colony.

36.     Accordingly, Colony is relieved of any obligation under the policies to defend or indemnify Trintec.

37.     In the alternative, Colony is not obligated to indemnify or otherwise reimburse Trintec for the attorneys' fees and costs it expended and incurred prior to notifying Colony of the claims and Counterclaim.

WHEREFORE, Plaintiff, Colony Insurance Company, requests that this Court: (a) assume jurisdiction over this matter; (b) issue a judgment declaring that Colony Insurance Company is not obligated to defend Trintec Construction, Inc. against the claims brought by Countryside Village Condominium Association, Inc.; (c) issue a judgment declaring that Colony Insurance Company is not obligated to indemnify Trintec Construction, Inc. for any of the damages sought by Countryside Village Condominium Association, Inc.; (d) reimburse Colony Insurance Company all attorneys' fees and costs expended by Colony Insurance Company in the defense of Trintec

16

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

Construction, Inc.; (e) in the alternative to (b), (c), and (d), issue a judgment declaring that Colony

Insurance Company is not obligated to indemnify or otherwise reimburse Trintec Construction,

Inc. for the attorneys' fees and costs it expended and incurred prior to notifying Colony Insurance

Company of the claims and Counterclaim; (f) award Colony Insurance Company the costs of this

action; and (g) award Colony Insurance Company any other relief this Court deems just and

equitable.

### COUNT II – THE POLICIES DO NOT AFFORD COVERAGE
### FOR COUNTRYSIDE'S FRAUDULENT CONSTRUCTION LIEN CLAIM

38.     Colony reasserts and incorporates ¶¶ 1 through 21, 23, and 27 through 29 into this

Count.

39.     With respect to the fraudulent construction lien claim, Countryside has not stated a

claim for "bodily injury" or "property damage" caused by an "occurrence" as required for

coverage under Coverage A of the policies.

40.     In addition, the Expected Or Intended Injury exclusion would preclude coverage for

this claim under Coverage A as well.

41.     Moreover, the filing of a fraudulent construction lien does not fall within any of the

enumerated offenses necessary to trigger coverage under Coverage B of the policies, and thus this

claim does not constitute "personal and advertising injury."

42.     Accordingly, the policies issued by Colony do not afford coverage for

Countryside's fraudulent construction lien claim.

WHEREFORE, Plaintiff, Colony Insurance Company, requests that this Court: (a) assume

jurisdiction over this matter; (b) issue a judgment declaring that the policies issued by Colony

Insurance Company do not afford coverage for Countryside Village Condominium Association,

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

---

Inc.'s fraudulent construction lien claim; (c) if appropriate, reimburse Colony Insurance Company all attorneys' fees and costs expended by Colony Insurance Company in the defense of Trintec Construction, Inc.; (d) award Colony Insurance Company the costs of this action; and (e) award Colony Insurance Company any other relief this Court deems just and equitable.

**COUNT III – THE POLICIES DO NOT AFFORD**
**COVERAGE FOR COUNTRYSIDE'S SLANDER OF TITLE CLAIM**

43.     Colony reasserts and incorporates ¶¶ 1 through 21, 23, and 27 through 29 into this Count.

44.     With respect to the slander of title claim, Countryside does not raise a claim for "bodily injury" or "property damage" caused by an "occurrence" sufficient to trigger coverage under Coverage A of the policies.

45.     Also, the Expected Or Intended Injury exclusion would preclude coverage for this claim under Coverage A.

46.     Moreover, this claim does not constitute "personal and advertising injury" under coverage B of the policies.

47.     Accordingly, the policies issued by Colony do not afford coverage for Countryside's slander of title claim.

WHEREFORE, Plaintiff, Colony Insurance Company, requests that this Court: (a) assume jurisdiction over this matter; (b) issue a judgment declaring that the policies issued by Colony Insurance Company do not afford coverage for Countryside Village Condominium Association, Inc.'s slander of title claim; (c) if appropriate, reimburse Colony Insurance Company all attorneys' fees and costs expended by Colony Insurance Company in the defense of Trintec Construction,

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

Inc.; (d) award Colony Insurance Company the costs of this action; and (e) award Colony Insurance Company any other relief this Court deems just and equitable.

## COUNT IV – THE POLICIES LIMIT AND/OR EXCLUDE COVERAGE FOR COUNTRYWIDE'S BREACH OF CONTRACT CLAIM

48.     Colony reasserts and incorporates ¶¶ 1 through 19 and 23 through 29 into this Count.

49.     With respect to the breach of contract claim, there may not be "property damage" caused by an "occurrence" as required for coverage under Coverage A of the policies. To the extent Countryside's claim is for or consists of the cost of repairing or removing defective work, there is no coverage under the policies.

50.     Furthermore, business risk exclusions j.(5), j.(6), l., and/or m. may act to preclude or limit coverage, as might the Open Roof Coverage Limitation endorsement, the Exterior Insulation And Finish Systems exclusion, and/or the Contractors Coverage Limitations endorsement.

WHEREFORE, Plaintiff, Colony Insurance Company, requests that this Court: (a) assume jurisdiction over this matter; (b) issue a judgment declaring the parties' respective rights and obligations under the policies issued by Colony Insurance Company with respect to Countryside Village Condominium Association, Inc.'s breach of contract claim; (c) if appropriate, reimburse Colony Insurance Company all attorneys' fees and costs expended by Colony Insurance Company in the defense of Trintec Construction, Inc.; (d) award Colony Insurance Company the costs of this action; and (e) award Colony Insurance Company any other relief this Court deems just and equitable.

Colony Ins. Co. v. Trintec Construction, et al.
Case Number:

## COUNT V – THE POLICIES DO NOT AFFORD COVERAGE FOR COUNTRYSIDE'S PUNTIVE DAMAGES CLAIMS

51.    Colony reasserts and incorporates ¶¶ 1 through 16 and 28 through 29 into this Count.

52.    In its Counterclaim, Countryside seeks in part to recover punitive damages from Trintec.

53.    The policies do not afford coverage for Countryside's punitive damages claim since such claims are uninsurable as a matter of public policy.

WHEREFORE, Plaintiff, Colony Insurance Company, requests that this Court: (a) assume jurisdiction over this matter; (b) issue a judgment declaring that Colony Insurance Company is not obligated to indemnify Trintec Construction, Inc. for Countryside Village Condominium Association, Inc.'s punitive damages claim; (c) award Colony Insurance Company the costs of this action; and (d) award Colony Insurance Company any other relief this Court deems just and equitable.

Dated: _March 12, 2010_

Respectfully submitted,

Hugh J. Connolly (Florida Bar Number 078440)
Attorney E-mail address:  hjc@scpalaw.com
STONE & CONNOLLY, P.A.
9100 South Dadeland Blvd., Suite 415
Miami, FL  33156
Telephone:    (305) 670-5044
Facsimile:     (305) 670-5015
Attorneys for Plaintiff COLONY

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 06-24673 CA 21

TRINTEC CONSTRUCTION, INC.,
a Florida corporation,
     Plaintiff,

v.

COUNTRYSIDE VILLAGE CONDOMINIUM
ASSOCIATION, INC., a Florida Corporation,
     Defendant,
_____/

COUNTRYSIDE VILLAGE CONDOMINIUM ASSOCIATION, INC.,
a Florida Corporation, and COUNTRYSIDE VILLAGE
CONDOMINIUM ASSOCIATION, INC., a Florida Corporation,
as Class Action Representative of All Unit Owners
in Proportion to Their Interests,

     Counter-Plaintiffs,

v.

TRINTEC CONSTRUCTION, INC.,
a Florida Corporation,

     Counter-Defendant
_____/

COUNTRYSIDE VILLAGE CONDOMINIUM ASSOCIATION, INC.,
a Florida Corporation, and COUNTRYSIDE VILLAGE
CONDOMINIUM ASSOCIATION, INC., a Florida Corporation,
as Class Action Representative of All Unit Owners
in Proportion to Their Interests,

     Third Party Plaintiffs,

v.

GREAT AMERICAN INSURANCE COMPANY,
A Ohio Corporation,
     Third Party Defendant.
_____/



3/20/08
al

CASE NO.: 06-24673 CA 21

## COUNTRYSIDE'S ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND THIRD PARTY COMPLAINT

COUNTRYSIDE CONDOMINIUM ASSOCIATION, INC., a Florida Corporation, ("Countryside"), through undersigned counsel and pursuant to Rules 1.100, 1.110, 1.140, 1.170, 1.180 and 1.221, Fla.R.Civ.P., and other applicable law, hereby serves its Answer to Amended Complaint, Affirmative Defenses, Counterclaim and Third Party Complaint, and states the following:

## ANSWER TO AMENDED COMPLAINT
### Nature of the Action:

1) Countryside admits that Trintec has brought an action for Breach of Contract, but denies that Trintec is entitled to relief sought.

### Jurisdiction and Venue

2) Countryside admits that the Court has jurisdiction over the subject matter of the complaint, but denies that Trintec is entitled to any relief sought.

3) Countryside admits allegations contained in paragraph 3.

4) Countryside admits allegations contained in paragraph 4.

5) Countryside admits allegations contained in paragraph 5.

6) Countryside admits allegations contained in paragraph 6.

7) Countryside admits allegations contained in paragraph 7 on information and belief.

8) Countryside admits allegations contained in paragraph 8 subject to the exceptions listed in Article II of the Contract.

9) Countryside denies allegations contained in paragraph 9.

10) Countryside denies allegations contained in paragraph 10.

11) Countryside denies allegations contained in paragraph 11.

12) Countryside lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 12, and therefore denies them.

13) Countryside denies allegations contained in paragraph 13.

14) Countryside admits that paragraph 14 recites the last two sentences of Article IV of the Contract, but fails to recite pertinent preceding language of Article IV.

15) Countryside denies allegations contained in paragraph 15.

16) Countryside denies allegations contained in paragraph 16.

17) Countryside denies allegations contained in paragraph 17.

18) Countryside denies allegations contained in paragraph 18.

19) Countryside incorporates by reference answers listed in paragraphs 1 through 18 of this answer as more fully set forth herein.

20) Countryside denies allegations contained in paragraph 20.

21) Countryside denies allegations contained in paragraph 21.

22) Countryside denies allegations contained in paragraph 22.

## AFFIRMATIVE DEFENSES TO TRINTEC'S AMENDED COMPLAINT
### FIRST AFFIRMATIVE DEFENSE

Countryside has paid Trintec all sums properly due Trintec and its laborers, materialmen, and subcontractors, and in fact, is entitled to offset and recoupment of amounts overpaid, given credits due Countryside by virtue of Trintec's breaches, omissions, failures

CASE NO.: 06-24673 CA 21

and defective performance, all as more fully set forth in its Affirmative Defenses   and Countryside's Counterclaim, incorporated herein.

## SECOND AFFIRMATIVE DEFENSE

Trintec agreed to execute the entire work pursuant to the terms of its January 31, 2005 Agreement with Countryside, a true and correct copy of which is appended to this pleading as Exhibit 1 ("Contract"), and in accordance with all contract documents, including without limitation, all plans, specifications, and governmental requirements (collectively, "Contract Documents"). Trintec materially and substantially breached its performance of the Contract by, among other things:

a) Failing to perform the Work in the manner in accordance with the Contract Documents.

b) Failing to comply with applicable building, health and safety standards in the performance of the Work.

c) Failing to apply proper techniques, materials and solutions regarding the Work and failure to detect or correct defective Work.

d) Failing to hire sufficiently skilled workers to execute the Work properly.

e) Failing to perform the Work in a workmanlike manner, including its failure to honor specifications intended to protect Countryside and failure to supervise its workers and/or subcontractors regarding defective and unworkmanlike performance.

f) Failing to honor unit prices of the Contract.

g) Failing to protect the Countryside Unit Owners' from excessive charges or from excessive burdens (including mechanics' liens) upon their property interests.

Trintec's breaches superseded and excuse any alleged breach by Countryside.

CASE NO.: 06-24673 CA 21

### THIRD AFFIRMATIVE DEFENSE

Trintec's money damages were caused by its own deficiencies, breaches of contract, and failures of performance, as set forth in Countryside's Second Affirmative Defense and Counterclaim, incorporated herein.

### FOURTH AFFIRMATIVE DEFENSE

Additional costs in excess of the Contract price claimed by Trintec are not reasonable or allowable, but rather result from the errors and omissions of Trintec and others (all of whom substantially contributed to such increases) and are not proper "extras" or "changes" for which Trintec is entitled to compensation under the Contract.

### FIFTH AFFIRMATIVE DEFENSE

Trintec failed to perform the Work in the manner in which it was intended and the Work performed was not suitable for the purpose intended.

### SIXTH AFFIRMATIVE DEFENSE

Trintec failed to comply with all conditions precedent to the proper filing of a lien or lien enforcement action, having failed among other things, to properly and timely join indispensable parties to the lien or lien enforcement action. Damages due Countryside for these failings, including punitive damages, off-set any damages due Trintec.

### SEVENTH AFFIRMATIVE DEFENSE

Countryside timely notified Trintec of all defects and defalcations in Trintec's work and Trintec refused to cure said defects and defalcations.

Feb 29 2008 6:36PM        LASERJET FAX                                        P.7

CASE NO.: 06-24673 CA 21

## EIGHTH AFFIRMATIVE DEFENSE

Trintec or its subcontractors, for whom it remained fully responsible under the Contract, excessively overcharged Countryside for the purported installation of plywood on certain buildings, which plywood *in fact* was never installed. Thus, Trintec or its subcontractors employed what appears to be fraudulent billing practices in the performance of the Work. Trintec invoiced and billed Countryside for various sheets of wood allegedly replaced or installed to repair rot damage throughout the buildings. In total, Trintec claimed to have replaced and installed more than 1,800 sheets of wood. However, what was installed was far less than stated. Of the 13 buildings comprising the condominium property, it appears that as few as only *one* of the buildings' installations actually matches what Trintec claims to have installed. Additionally, the base unit price for sheets of wood more than doubled the cost which Trintec agreed to charge Countryside, in derogation of the Contract Documents. Trintec also fraudulently induced premature payment draws from Countryside by arranging materials so as to appear that units were being completed on schedule and demanding payment thus triggering a corresponding payment draw as called for in the Contract when, in truth and in fact, the necessary work had not been completed as required.

## NINTH AFFFIRMATIVE DEFENSE

For the reasons set forth in the incorporated Counterclaim and Third Party Complaint, Trintec is barred by the doctrine of waiver.

CASE NO.: 06-24673 CA 21

## TENTH AFFIRMATIVE DEFENSE

For the reasons set forth in the incorporated Counterclaim and Third Party Complaint, Trintec is barred by the doctrine of estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

Trintec improperly, and in bad faith, terminated its Contract with Countryside; therefore, Countryside is entitled to set-off any damages suffered by Trintec by damages it suffered as a result of Trintec's wrongful termination of the Contract.

## TWELFTH AFFIRMATIVE DEFENSE

The labor and material provided by Trintec pursuant to its Contract with Countryside had a negative value, as it had to be demolished and re-done. Thus, Countryside owes Trintec nothing under the Contract, and Trintec is liable to Countryside as alleged in the incorporated Counterclaim.

## RESERVATION OF RIGHT TO AMEND

Investigation continues and discovery has not yet commenced in earnest, such that Countryside reserves the right to amend, add or delete affirmative defenses in accordance with the applicable rules of procedure and Florida law.

## JURY TRIAL DEMANDED

Defendant demands a jury trial on all issues so triable.

WHEREFORE, Countryside demands judgment in its favor and that Trintec take nothing on its claim for breach of contract, that Countryside be awarded attorneys fees and costs as provided by the Contract, and that this Court enter such further relief as the Court determines just

CASE NO.: 06-24673 CA 21

and proper under the circumstances.

## COUNTERCLAIM

Countryside Association, Inc., ("Countryside") and Countryside Association, Inc., as Class Action Representative of All Unit Owners ("Countryside Unit Owners"), Counter-Plaintiffs hereby sue Trintec Construction, Inc., ("Trintec") Counter-Defendant and state the following:

## THE PARTIES, JURISDICTION AND VENUE

1)    All conditions precedent to filing of this Counterclaim have occurred, or are deemed excused, waived or otherwise satisfied.

2)    This is an action for damages that exceed Fifteen Thousand Dollars and No Cents ($15,000.00), exclusive of interest, costs and attorneys' fees, such that this Court has jurisdiction over the subject matter of this case pursuant to Section 26.012, Florida Statutes (2006).

3)    Countryside is a Florida corporation and condominium association with its principal place of business located in Miami-Dade County, Florida.  Pursuant to Chapter 718, Florida Statutes (2006) and Rule 1.221, Florida Rues of Civil Procedure (2007), Countryside has authority to maintain this suit against the Counter-Defendant.

4)    Countryside is a Florida corporation and condominium association as Class Representative for the Unit Owners and residence has its principal place of business located in Miami-Dade County, Florida.  Pursuant to Chapter 718, Florida Statutes (2006) and Rule 1.221, Florida Rues of Civil Procedure (2007), Countryside has authority to maintain this suit

P. 10

CASE NO.: 06-24673 CA 21

on behalf of the Countryside Unit Owners against the Counter-Defendant.

5)  During all times pertinent to this Complaint, Trintec was a Florida corporation and licensed construction company authorized to do business in Miami-Dade County.

6)  All of the significant events giving rise to this lawsuit relate to certain real property owned and operated by Countryside at 18725 - 19085 NW 62nd Avenue, in Miami-Dade County, Florida (the "Property" or "Site"). Accordingly, venue in this District is proper.

## TRINTEC'S LIEN

7)  On or about November 16, 2007, Trintec filed a Notice of Lis Pendens against the subject property and a Complaint seeking in a single count to foreclose a construction lien against Countryside Village Condominium Association. That construction lien was recorded on May 26, 2006 in the Public Records of Miami-Dade County in the amount of $1,307,214.30("Lien"). A true and correct copy of the Complaint, Lis Pendens, and Lien is attached hereto as Composite Exhibit 2.

8)  Countryside's Motion to Dismiss said Complaint argued that 1) Trintec ignored the tenets of Florida Law by filing a blanket lien encumbering all the condominium property, and thereby unfairly encumbering each individual unit with the entire lien, and that 2) Trintec failed to sue the real party in interest by naming Countryside in its corporate capacity rather than as the class representative of the unit owners.

9)  After extensive hearing, on October 12, 2007, the Court further entered an Order Dismissing Trintec's Lien without prejudice as it failed to comply with the requisites of Florida statutory law and the judicial authorities interpreting it by neglecting to name the

CASE NO.: 06-24673 CA 21

Countryside unit owners or their respective percentage shares of the common expenses of the condominium.

10)    On October 16, 2007, Trintec filed a Motion for Clarification and Motion to Vacate Order Discharging Lien, which was ultimately denied on February 5, 2008. Hence, the defective lien recorded by Trintec was and has been improperly clouding title for over 22 months since the recording of the lien on May 26, 2006.

11)    Although to date, Trintec has not sought to amend or to further enforce either the lis pendens or the lien, the damages incurred by Countryside and its unit owners caused by the lis pendens and the lien remain a matter before this Court which must be adjudicated.

## ATTORNEY'S FEES

12)    Countryside and Countryside Unit Owners have retained the undersigned law firm to represent its interests and are obligated to pay the firm a reasonable attorneys' fees, for which they seek recovery pursuant to the terms of the Parties' agreement, Florida law and otherwise.

## THE CONTRACTS

13)    On or about January 31, 2005, Countryside executed an agreement with Trintec (the "Trintec Contract") concerning the re-roofing and siding replacement project for the thirteen (13) buildings comprising "the Property" of the unit owners as well as common areas, as more fully set forth in the Trintec Contract (the "Work"). A true and correct copy of the Trintec Contract is attached hereto as Exhibit 1.

14)    During all times pertinent to this Complaint, Countryside was a condominium

CASE NO.: 06-24673 CA 21

association comprised of approximately 208 units all located at 18725 - 19085 NW 62nd Avenue, in Miami-Dade County, Florida (the "Property" or "Site").

15)     During all times pertinent to this Complaint, GAIC was an Ohio corporation insurance company which was authorized to conduct business in the State of Florida and in Miami-Dade County.

16)     On or about March 14, 2005, GAIC entered into agreement with Trintec ("GAIC Agreement") to post a performance bond in the amount of Seven Hundred Seventy Seventy Thousand Three Hundred Sixteen dollars ($777,316.00) as surety for Trintec guaranteeing satisfactory performance by Trintec's fulfilling its obligations under the contract with Countryside.  A true and correct copy of the GAIC Agreement is attached hereto and incorporated by reference as Exhibit 3. Countryside is an Obligee of the Bond.

17)     Pursuant to the terms of the Trintec Contract, Trintec agreed *inter alia* to obtain proper permitting and to perform the Work, including supervision; to perform the work in accordance with the plans and specifications of Swaysland Professional Engineering Consultants, Inc.; to comply with all federal, state and local laws and ordinances (including applicable building codes); to substantially complete the Work before any final payment; to perform the Work in a safe manner; and to offset any amounts it claimed was due Trintec by any amounts due Countryside to cure any defaults or defects of Trintec; and to provide Payment and Performance Bonds as part of the cost of the Trintec Contract. Trintec further agreed to maintain the Property free from unwanted liens against the Property.

CASE NO.: 06-24673 CA 21

## TRINTEC'S BREACH OF CONTRACT

18) Trintec materially and substantially breached its performance of the Contract by, among other things:

a) Failing to perform the Work in the manner in accordance with the Contract Documents;

b) Failing to comply with applicable building, health and safety standards in the performance of the Work;

c) Failing to apply proper techniques, materials and solutions regarding the Work and failure to detect or correct defective Work;

d) Failing to hire or properly supervise sufficiently skilled workers or subcontractors to execute the Work properly;

e) Failing to honor specifications intended to protect Countryside;

f) Failing to honor unit prices of the Contract; and

g) Failing to protect the Countryside Unit Owners' from excessive charges or from excessive burdens (including mechanics' liens) upon their property interests.

## TRINTEC'S DEFICIENT PERFORMANCE

19) Specifically, Trintec's deficient performance and substantial breaches include its:

a) Failing to brace and properly support the gabled ends during construction and for protection during hurricane/storm activity.

b) Failing to properly address the replacement of vents on the gabled ends. Trintec improperly removed or covered over plumbing stacks and sewer vents in the performance of work.

c) Failing to properly perform work on the soffits: soffits were not properly primed or fastened; soffits were screwed on only one side, under the fascia, but not adjacent to the building; truss tails were not attached to buildings.

d) Failing to properly treat rotted wood, water soaked Gypsum Wall Board and

CASE NO.: 06-24673 CA 21

mold behind siding and the prevalence of rotted fascia.

e)   Improperly utilizing drywall screws instead of galvanized nails in the performance of work.

f)   Improperly spacing nails and utilizing nail patterns that were incorrect (every 2' instead of 6-12").

g)   Improperly replacing plywood (allowing use of 5/16" instead of code compliant thickness). Additionally, replacement wood was installed before being properly primed.

h)   Failing to properly coordinate an appropriate schedule and sequencing for re-roofing and to otherwise follow the specifications requiring that only enough roofing as necessary to accommodate the day's work be done, so that any exposed area remained One Hundred percent (100%) water tight and "buttoned down" at the end of each day.

i)   Failing to properly remove existing roofing materials and same-day replacement with new materials.

## TRINTEC'S IMPROPER AND/OR FRAUDULENT BILLING PRACTICES

20)   Trintec proposed change orders for substandard, defective, fraudulent, incomplete and non-compliant work. Trintec improperly submitted (a) requisitions for work and materials for plywood replacement that was not actually provided, (b) requisitions for shoddy work such as fascia and soffits that were not primed, (c) requisitions for work, including some of the final work of contractor, when all roofs were unfinished and leaking, (d) change orders for plywood requisitioned during term of contract that was priced more than three times the   contract price and more than two times the market price, in derogation of the Contract Documents.

21)   Trintec also fraudulently induced premature payment draws from Countryside by arranging materials so as to appear that units were being completed on schedule and demanding

P.15

CASE NO.: 06-24673 CA 21

payment thus triggering a corresponding payment draw as called for in the Contract when, in truth and in fact, the necessary work had not been completed as required.

22)   Trintec invoiced and billed Countryside for various sheets of wood allegedly replaced or installed to repair rot damage throughout the buildings. In total, Trintec claimed to have replaced and installed more than 1,800 sheets of wood. However, what was installed was far less than stated. Of the 13 buildings comprising the condominium property, it appears that as few as only *one* of the buildings' installations actually matches what Trintec claims to have installed. Additionally, the base unit price for sheets of wood more than doubled the cost which Trintec agreed to charge Countryside, in derogation of the Contract Documents.

23)   As a result of Defendants actions and omissions, the unit owners and residents of Countryside experienced severe water intrusion and substantial, ongoing damages to the association and its residents, shoddy and substandard work, lost use and distress.

## COUNT I

### FRAUDULENT CONSTRUCTION LIEN AGAINST TRINTEC
### (Countryside and Countryside Unit Owners v. Trintec)

24)   Paragraphs 1 through 23 are realleged and incorporated fully herein.

25)   Trintec's filing of the aforesaid Claim of Lien was fraudulent because:

    a.   The amount stated was willfully exaggerated; and

    b.   Trintec included in the Lien a claim for the Work not performed or materials not furnished for the Property upon which TRINTEC filed the lien.

26)   In the alternative, Trintec compiled its Lien with such willful and gross negligence as

CASE NO.: 06-24673 CA 21

to amount to a willful exaggeration amounting to a fraudulent lien.

27) Specifically, Trintec invoiced and billed Countryside for various sheets of wood allegedly replaced or installed to repair rot damage throughout the buildings. In total, Trintec claimed to have replaced and installed more than 1,800 sheets of wood. However, what was installed was far less than stated. Of the 13 buildings comprising the condominium property, it appears that as few as only *one* of the buildings' installations actually matches what Trintec claims to have installed. Additionally, the base unit price for sheets of wood more than doubled the cost which Trintec agreed to charge Countryside, in derogation of the Contract Documents.

28) As a direct and proximate result of Trintec's filing of the Lien, Counter-Plaintiffs have sustained damages. Pursuant to Section 713.31(2)(c), Florida Statutes (2006) Trintec shall be liable to Countryside for "damages, which shall include court costs, clerk's fees, a reasonable attorney's fee for services in securing the discharge of the lien ... and punitive damages in an amount not exceeding the difference between the amount claimed by the lienor to be due or to become due and the amount actually due or to become due".

WHEREFORE, Counter-Plaintiff demands judgment against Trintec for:

A. A finding that Trintec's construction lien was unenforceable;

B. General damages in excess of $15,000;

C. Attorneys fees and expenses of litigation;

D. Punitive damages;

E. Prejudgment and post judgment interest; and

F. Such other and further relief as this Court deems just and equitable.

CASE NO.: 06-24673 CA 21

## COUNT II
### SLANDER OF TITLE AGAINST TRINTEC
#### (Countryside and Countryside Unit Owners v. Trintec)

29) Paragraphs 1 through 23 are realleged and fully incorporated herein.

30) Trintec wrongfully recorded the lis pendens and intentionally and willfully recorded the claim of lien knowing that it was overbroad, failed to properly name the true owners of the Property, failed to properly allocate the Lien in proportion to the Unit Owners' pro rata interests, and falsified and grossly exaggerated the lien.

31) As a result, Countryside Unit Owners have incurred and will continue to incur damages including but not limited to attorneys' fees in clearing the title to the Property, diminution in property value, non-attorney fees and expenses and other consequential damages.

WHEREFORE, Plaintiffs demands judgment against Trintec for:

A. General damages in excess of $15,000;

B. Attorneys fees and expenses of litigation;

C. Prejudgment and post judgment interest; and

D. Such other and further relief as this Court deems just and equitable.

## COUNT III
### BREACH OF CONTRACT AGAINST TRINTEC
#### (Countryside against Trintec)

32) Paragraphs 1 through 6, and 12 through 23 are realleged and incorporated fully herein.

33) Trintec has breached the construction Contract as specifically alleged.

FEB 29 2008 6:43PM    LASERJET FAX                                                    P.18

CASE NO.: 06-24673 CA 21

34) As a result of Trintec's actions and omissions, the unit owners and residents of Countryside experienced severe water intrusion and substantial, ongoing damages to the association and its residents, shoddy and substandard work, lost use and distress.

35) As a result of Trintec's shoddy repair work and abandonment of its obligations under the Contract, Countryside was forced to seek the services from others including contractors and engineers, at additional expense, and so as to secure and protect the Property from further damages and complete destruction.

WHEREFORE, Countryside demands judgment against Trintec for:

A. Damages in excess of $15,000;

B. Attorneys' fees and expenses of litigation; and

C. Such other and further relief as this Court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all issues so triable

## COUNTRYSIDE'S THIRD PARTY COMPLAINT AGAINST GREAT AMERICAN

Countryside and Countryside Unit Owners sue GREAT AMERICAN INSURANCE COMPANY ("GAIC"), as a third party defendant, pursuant to Rules 1.100, 1.180, and 1.221, Fla.R.Civ.P., and state the following:

## BREACH OF PERFORMANCE BOND

36) Paragraphs 1 through 6, and 12 through 23 are realleged and incorporated fully herein.

37) Among other things, the GAIC Agreement set forth certain terms and conditions of its obligations under the Performance Bond, as specifically detailed below:

CASE NO.: 06-24673 CA 21

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligation thereunder, the surety may promptly remedy default or shall promptly

1). Complete the Contract in accordance with its terms and conditions; or

2). Obtain a bid or bids for completing the Contract in accordance with its term and conditions, and upon determination by Surety of the lowest responsible bidder, or if the owner elects, upon determination by the Owner and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Owner, and make available as work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

38) As surety on the Performance Bond, GAIC has an obligation to pay Countryside pursuant to the terms of the performance bond upon default by Trintec.

39) Trintec failed to fulfill its responsibilities under the Contract with Countryside by performing shoddy workmanship using inadequate replacement roofing, unnecessarily exposing the buildings' structures to water damage during the hurricane season and by abandoning the project leaving the Property vulnerable to weather hazards of the rain and hurricane season, all as more fully set forth in paragraphs 12 through 18 and 31 above.

40) Trintec had an obligation to Countryside and to Countryside Unit Owners to perform its obligations under the Contract with due care in a responsible manner and in accord with the procedures outlined in the Contract Documents.

41) Trintec grossly failed to meet its obligations under the contract, causing Countryside and Countryside Unit Owners to suffer severe damage to the Property.

CASE NO.: 06-24673 CA 21

42) As a result of Trintec's shoddy repair work and abandonment of its obligations under the contract, Countryside was forced to seek the services of another roofing contractor at an additional expense to mitigate the increasing damages to the vulnerable Property.

43) Countryside repeatedly and timely advised GAIC of Trintec's failure to comply with Trintec's obligations under the contract and invited GAIC to make an independent assessment of the faulty and inadequate roofing repairs performed by their insured. Countryside further requested that GAIC undertake to repair the deficient Work.

44) GAIC repeatedly ignored requests by Countryside to inspect the Property, independently assess the damages caused by Trintec's default on the contract, or to repair the deficient Work.

45) As a result thereof, GAIC is obliged under the terms of the Performance Bond to pay Countryside and Countryside Unit Owners its damages, including without limitation, the cost of repair of the Work and damages resulting from Trintec's breaches of performance.

WHEREFORE, Countryside and Countryside Unit Owners demand judgment against GAIC for monetary damages, special and consequential damages, interest, costs and attorney's fees, and such other and further relief as is just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via facsimile and Regular U.S. Mail to Kerry H. Lewis, Esquire, Elder & Lewis, P.A., Attorneys for

CASE NO.: 06-24673 CA 21

Trintec Construction, Inc., Bayview Plaza, 3225 Aviation Avenue, Suite 301, Coconut Grove, Florida 33133 on this 29th day of February, 2008.

THE FULLERTON LAW GROUP, LLP
**Attorneys for Plaintiffs COUNTRYSIDE**
2000 Ponce de Leon Blvd. Suite 501
Coral Gables, FL 33134
Telephone: (305) 421-6791 Facsimile: (305) 443-1603

By: _____
PETER V. FULLERTON
Florida Bar No.: 797944

**12/16/2009 03:21 PM**

I hereby certify this to be a true and correct copy.



Carolyn Ford-Data Entry Supervisor

## COMMON POLICY DECLARATIONS

☒ **COLONY INSURANCE COMPANY**

☐ **COLONY SPECIALTY INSURANCE COMPANY**

☐ **COLONY NATIONAL INSURANCE COMPANY**

**9201 FOREST HILL AVENUE, SUITE 200
RICHMOND, VA 23235**

**POLICY NUMBER**
GL3156900B

**RENEWAL OF:**
GL3156900A

**PDQ CODE:**
91F

1. **NAMED INSURED AND MAILING ADDRESS:**
TRINTEC CONSTRUCTION, INC.

13091 N.W. 43RD AVENUE, UNIT A-2
OPA LOCKA, FL 33054

**PRODUCER:** Richard F. Hull
09020

HULL & COMPANY, INC.
P.O. BOX 21567
FT. LAUDERDALE, FL 33335

2. **POLICY PERIOD:** From   April 10, 2005   to   April 10, 2006   12:01 A.M. Standard Time at your Mailing Address above.
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

3. **THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM |
|---|---|
| Commercial General Liability Coverage Part | $ ▮▮▮▮ |
| Commercial Property Coverage Part | $   Not Covered |
| Commercial Crime Coverage Part | $   Not Covered |
| Commercial Inland Marine Coverage Part | $   Not Covered |
| Certified Terrorism Coverage | $   Not Taken |
| (Per Policyholder Disclosure TRIA2002Notice-1202 attached) | |
| Commercial Liquor Liability Coverage Part | $   Not Covered |

NOTARY PUBLIC

My Commission Expires
6-30-2012

**INSURED PRODUCER:**
William F Dowd
W.F. ROEMER INSURANCE
4752 WEST COMMERCIAL BLVD
FT. LAUDERDALE, FL 33319

CODE: 3875

| | |
|---|---|
| **TOTAL** | $ ▮▮▮▮ |
| Policy Fee | $ ▮▮▮▮ |
| Inspection Fee | $ ▮▮▮▮ |
| Surplus Lines Tax 5% | $ ▮▮▮▮ |
| ALSO - Service Fee .25% | $ ▮▮▮▮ |

Premium shown is payable: ▮▮▮▮
at Inception.

**Total Policy
Premium:** ▮▮▮▮

4. **FORMS APPLICABLE TO ALL COVERAGES:**
See Schedule of Forms and Endorsements – U001 (07/02)

**Flat Cancellation
Not Permitted**

5. **BUSINESS DESCRIPTION:** General Contractor

Countersigned:   4/27/2005  VL/sm1
            Date

By:  *Richard F. Hull*
            Authorized Representative
            Surplus Lines Agent # A125683

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

DCJ6550 (07/02)

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1994



EXHIBIT B

**12/16/2009 03:21 PM**

Insured: TRINTEC CONSTRUCTION, INC.
Policy Number: GL3156900B

U001 (10/04)

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

**NUMBER**                                        **TITLE**

DCJ6550 (07/02) Common Policy Declaration
PJCG (04/03) Policy Jacket
U002 (09/04) Minimum Policy Premium
U094 (07/02) Service Of Suit
IL0017 (11/98) Common Policy Conditions

**12/16/2009 03:21 PM**



9201 Forest Hill Avenue
Suite 200
Richmond, VA 23235



IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary as duly authorized representatives of the Company.

**PRESIDENT**

**SECRETARY**

Colony Insurance Company   Colony National Insurance Company   Colony Specialty Insurance Company
PJCG 04/03                       Members of ⟨ Argonaut

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supersede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium". "Minimum earned premium" means the premium that is calculated as follows:

1. The total policy premium as shown in the policy Declarations, plus
2. Any premium adjustment by endorsements, plus
3. Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1. If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than 25% of the "minimum earned premium".
2. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U002-0904

**12/16/2009 03:21 PM**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
  Colony Insurance Company,
  Colony National Insurance Company, or
  Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

  ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U094-0702

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

**12/16/2009 03:21 PM**

Insured: TRINTEC CONSTRUCTION, INC.                                    U001 (10/04)
Policy Number: GL3156900B

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|

DCJ6553 (07/02) Commercial General Liability Coverage Part Declarations
CL170 (06/93) Extension of Declarations
CG0001 (10/01) Commercial General Liability Coverage Form
U003 (07/02) Hazardous Materials Exclusions
U004 (07/02) Miscellaneous Exclusions Endorsements
U048 (09/04) Employment-Related Practices Exclusion
U159 (07/02) Limitation of Coverage to Business Description
UIL0255 (07/02) Florida Changes - Cancellation and Nonrenewal
CG0062 (12/02) War Liability Exclusion
CG2167 (04/02) Fungi or Bacteria Exclusion
IL0021 (04/98) Nuclear Energy Liability Exclusion Endorsement
CG2186 (12/04) Exclusion - Exterior Insulation And Finish Systems
U089 (07/02) Subsidence Exclusion
U122B (05/04) Exclusion - Designated Work - Residential New Construction
U155 (07/02) Abosolute Auto, Aircraft and Watercraft Exclusion
U015 (07/02) Demolition Exclusion
U180 (07/02) Over Spray Property Damage Exclusion
U076 (07/02) Work Height Exclusion
U007 (07/02) Open Roof Coverage Limitation
CG2139 (10/93) Contractual Limitation
U070 (07/02) Deductible Liability Insurance
U008-CP (07/02) Contractors Coverage Limitations And Audit
CG2033 (10/01) Additional Insured - Owners, Lessees Or Contractors - Automatic Status When Required in Construction Agreement With You
UCG2175 (09/04) Certified Acts Of Terrorism And Other Acts Of Terrorism Exclusion

**12/16/2009 03:21 PM**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

This coverage part consists of this Declarations form, the Common Policy Conditions, the Commercial General Liability Coverage Form and the endorsements indicated as applicable. (See COMMON POLICY DECLARATIONS for items 1 and 2.)

**POLICY NO.** GL3156900B
**NAMED INSURED:** TRINTEC CONSTRUCTION, INC.

### 3.   LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products – Completed Operations) | $   2,000,000.00 |
| Products Completed Operations Aggregate Limit | $   2,000,000.00 |
| Personal & Advertising Injury Limit | $   1,000,000.00 |
| Each Occurrence Limit | $   1,000,000.00 |
| Damage To Premises Rented To You Limit | $      100,000.00 Any One Premises |
| Medical Expense Limit | $          5,000.00 Any One Person |

**RETROACTIVE DATE** (CG 00 02 only) – Coverage A of this insurance does not apply to "bodily injury" or "Property damage" which occurs before Retroactive Date, if any, shown below.

Retroactive Date: NONE                                       (Enter Date or "None" if no Retroactive Date Applies)

Location of All Premises You Own, Rent or Occupy (Same as Item 1 unless shown below):

**See CL170**

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATE | ADVANCE PREMIUM | |
|---|---|---|---|---|---|
| | | | | PR / CO | ALL OTHER |
| **See CL170** | | | | | |

**4.   FORMS / ENDORSEMENTS APPLICABLE:**
See Schedule of Forms and Endorsements – U001 (07/02)

**TOTAL PREMIUM FOR THIS COVERAGE PART**

**5.   FORM OF BUSINESS:** Corporation

Audit Period:  Annual unless otherwise stated:

DCJ6553 (07-02)

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1984

12/16/2009 03:21 PM

# COMMERCIAL GENERAL LIABILITY
## EXTENSION OF DECLARATIONS

Policy Number GL3156900B

**LOCATION OF PREMISES**

Location of All Premises You Own, Rent or Occupy:
13091 N.W. 43rd Avenue, Unit A-2, Opa Locka, FL 33054

**PREMIUM**

| Classification | Code No. | Premium Basis | Rate Prem/Op | Rate Pr/Co | Advance Premium Prem/Op | Advance Premium Pr/Co |
|---|---|---|---|---|---|---|
| Contractors executive supervisors or executive superintendents products completed operations are subject to the general aggregate limit | ▬▬ | P) ▬▬▬ | ▬▬▬ | Included | ▬▬▬ | Included |
| Carpentry - interior | ▬▬ | P) ▬▬▬ | ▬▬▬ | Included | ▬▬▬ | Included |
| Contractors - subcontracted work - in connection with construction, reconstruction, repair or erection of buildings | ▬▬ | C) ▬▬▬0 | ▬▬▬ | Included | ▬▬▬ | Included |
| Blanket Additional Insured Up To 10 - 100% Fully Earned | | T) ▬▬ | ▬▬ | Included | ▬▬▬ | Included |
| Painting - interior - buildings or structures | ▬▬ | P) 2▬▬ | ▬▬▬ | Included | ▬▬▬ | Included |

Extension of Declarations—Total Advance Premium $ ▬▬▬          Minimum and Deposit

CL 170 (6-93)

12/16/2009 03:21 PM

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000
CG 00 01 10 01   □

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

 © ISO Properties, Inc., 2000

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000

CG 00 01 10 01

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

© ISO Properties, Inc., 2000

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

   © ISO Properties, Inc., 2000   CG 00 01 10 01   □

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

© ISO Properties, Inc., 2000

b. Up to $250 for cost of bail bonds required be-cause of accidents or traffic law violations aris-ing out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the in-sured at our request to assist us in the investi-gation or defense of the claim or "suit", includ-ing actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment in-terest based on that period of time after the of-fer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and be-fore we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insur-ance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks dam-ages for which the insured has assumed the li-ability of the indemnitee in a contract or agree-ment that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been as-sumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the inter-ests of the insured and the interests of the in-demnitee;

e. The indemnitee and the insured ask us to con-duct and control the defense of that indemnitee against such "suit" and agree that we can as-sign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any de-mands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coor-dinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attor-neys' fees incurred by us in the defense of that in-demnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Cov-erage A – Bodily Injury And Property Damage Li-ability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litiga-tion expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insur-ance in the payment of judgments or settle-ments; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

© ISO Properties, Inc., 2000

CG 00 01 10 01

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

© ISO Properties, Inc., 2000

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000

CG 00 01 10 01

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2000

CG 00 01 10 01

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

   (1) Goods or products made or sold by you in the territory described in **a.** above;

   (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

   (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01   □

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

© ISO Properties, Inc., 2000

**b.** Includes

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

  **(1)** Work or operations performed by you or on your behalf; and

  **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

  **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. and SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, n. and m.** are replaced by the following:

This insurance does not apply to:

**Hazardous Materials**

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of  "hazardous materials".

(3) Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".

(4) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **(1)**, **(2)**, or **(3)** above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B.  **SECTION V – DEFINITIONS** is amended and the following added:

"Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MISCELLANEOUS EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following is added:

### EXCLUSION - INTERCOMPANY PRODUCTS SUITS

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of or resulting from "your products" and included within the "products-completed operations hazard".

B.  **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following are added:

### USL&H, JONES ACT and MARITIME EXCLUSION

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

(1)   operations over navigable waters or offshore including but not limited to drilling and production platforms, pipelines, and vessels; or

(2)   direct or indirect actions including but not limited to subrogation involving U.S. Longshore & Harbor Workers Compensation Act (USL&H), Merchant Marine Act ("Jones Act") or other maritime laws and any amendments to those laws.

### EXCLUSION - PROFESSIONAL SERVICES

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" except by endorsement to this policy and then only to the extent of such endorsement.

"Professional service" means:

(1)   Legal, accounting or advertising services;

(2)   Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3)   Engineering services, including related supervisory or inspection services;

(4)   Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

(5)   Any health or therapeutic service, treatment, advice or instruction;

(6)   Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming;

(7)   Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8)   Body piercing or tattooing services including but not limited to the insertion of pigment, collagen or any other foreign substance into or under the skin;

(9)   Services in the practice of pharmacy;

(10)  Law enforcement or firefighting services; and

(11)  Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

12/16/2009 03:21 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This insurance does not apply to:

**Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

    **(1)**  A person arising out of any:

        **(a)** Refusal to employ that person;

        **(b)** Termination of that person's employment; or

        **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse directed at any person; or

    **(2)**  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE
## TO
# BUSINESS DESCRIPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

BUSINESS DESCRIPTION:

General Contractor

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

   (4) The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

B. **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

   This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U159-0702

Page 1 of 1

12/16/2009 03:21 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

OUTPUT POLICY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY POLICY
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A.  Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

   **2. Cancellation For Policies In Effect 90 Days Or Less**

   a.  If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(2)** 20 days before the effective date of cancellation if we cancel for any other reason.

B.  The following is added to the **Cancellation** Common Policy Condition:

   **7. Cancellation For Policies In Effect For More Than 90 Days**

   C. a. If this policy has been in effect for more than 90 days, we will mail or deliver to the first Named Insured written notice of cancellation, at least:

   **(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

   **(2)** 45 days before the effective date of cancellation for any other reason.

C.  The following is added:

   **NONRENEWAL**

   1.  If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days prior to the expiration of the policy.

   2.  Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

   ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

UIL0255-0702        Contains material copyright, Insurance Services Office, Inc., 1999        Page 1 of 1
                    with its permission.

**12/16/2009 03:21 PM**

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

12/16/2009 03:21 PM

COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2001

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

Copyright, Insurance Services Office, Inc., 1997

□

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 Copyright, Insurance Services Office, Inc., 1997   IL 00 21 04 98   □

12/16/2009 03:21 PM

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

This insurance does not apply to "bodily injury" or "property damage" caused by, resulting from, attributable or contributed to, or aggravated by "subsidence".

B. **SECTION V – DEFINITIONS**  is amended and the following added:

"Subsidence" means ground movement caused by soil conditions including but not limited to:

    **a.**  soil erosion, freezing or thawing,

    **b.**  improperly compacted soil or construction defects,

    **c.**  roots of trees or shrubs,

    **d.**  collapse of storm or sewer drains, or

    **e.**  natural occurring shrink or swell soil.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

12/16/2009 03:21 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - DESIGNATED WORK - RESIDENTIAL NEW CONSTRUCTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions is amended and the following added:

**Residential New Construction Work**

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of or resulting from "your work" performed on new single or multiple family housing, apartment, townhouse or condominium projects.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U122B-0504

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ABSOLUTE
# AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, paragraph **g.** is deleted and replaced with the following:

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

B. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance**, paragraph **b. Excess Insurance**, subparagraph **(1)(d)** is deleted.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U155-0702

**12/16/2009 03:21 PM**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEMOLITION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions is amended and the following added:

**Demolition**

This insurance does not apply to:

    **(1)** "bodily injury" or "property damage" arising out of or resulting from:

        **(a)** the use, handling or storage of explosive materials; or

        **(b)** the use of a wrecking ball and chain or similar apparatus; or

        **(c)** the demolition of any building or structure which has an original height in excess of three stories;

    **(2)** "property damage" to

        **(a)** any abutting, adjoining, shared or common wall; and

        **(b)** any building and/or property of which such wall is a part.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U015-0702

Page 1 of 1

12/16/2009 03:21 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OVER SPRAY PROPERTY DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions is amended and the following added:

This insurance does not apply to:

**OVER SPRAY PROPERTY DAMAGE**

"Property damage" caused by the spraying of paint, foam or other material by you or any other person performing such work on your behalf.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WORK HEIGHT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following exclusion added:

**Work Height**

This insurance does not apply to:

(1) "bodily injury" or "property damage" arising out of or resulting from ongoing operations performed above a ground height of three stories on any building or structure conducted by you or on your behalf for yourself or for others; or

(2) "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of or resulting from "your work" performed above a ground height of three stories on any building or structure.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

# OPEN ROOF COVERAGE LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

**Open Roof and Heating Equipment**

This Insurance does not apply to "property damage" arising out of or resulting from:

(1) an "open roof".

   This exclusion does not apply if:

   (a) such "open roof" is covered with suitable waterproof material at the time of loss; and

   (b) such suitable waterproof material has been secured to the structure;

(2) heat process equipment.

   This exclusion does not apply if the insured:

   (a) maintains a 15 lb. or larger charged ABC extinguisher at the site; and

   (b) maintains personnel at the site for 30 minutes or longer after the equipment has been shut off or left the site, and

   (c) personally inspects the area the heat work has been performed prior to leaving the site.

B.  **SECTION V – DEFINITIONS** is amended and the following added:

"Open roof" means any roof or section of a roof where the protective covering (shingles, tar, felt paper, etc.) has been removed leaving the shell of the structure exposed.

   ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**12/16/2009 03:21 PM**

COMMERCIAL GENERAL LIABILITY
CG 21 39 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:

"Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement.

Copyright, Insurance Services Office, Inc., 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
|---|---|---|---|
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $ N/A | | $ N/A |
| OR | | | |
| Property Damage Liability | $ N/A | | $ N/A |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ 1000.00 | | $ N/A |

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined; or

   d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

2. PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

    a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    b. Under Property Damage Liability Coverage, to all damages because of "property damage";

    c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

       (1) "Bodily injury";

       (2) "Property damage"; or

       (3) "Bodily injury" and "property damage" combined; or

    d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

    1. Our right and duty to defend the insured against any "suits" seeking those damages; and

    2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We, at our sole election and option, may either:

    1. Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

    2. Simultaneously upon receipt of notice of any claim or at any time thereafter, request you pay or deposit with us all or any part of the deductible amount, to be held and applied by us as herein provided.

      ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Includes copyrighted material of ISO Properties, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTORS COVERAGE LIMITATIONS AND AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, e. is deleted and replaced as follows:**

This insurance does not apply to:

    e. **Employer's Liability**

    "Bodily injury" to:

    (1) An "employee" or "temporary worker" of any insured arising out of and in the course of:

        (a) Employment by any insured; or

        (b) Performing duties related to the conduct of any insured's business; or

    (2) A fellow "employee" or "temporary worker" of any insured arising out of and in the course of such employment when the insured is an "executive officer" of such employer; or

    (3) The spouse, child, parent, brother or sister of that "employee" or "temporary worker" as a consequence of Paragraph (1) above.

    This exclusion applies:

    (1) Whether an insured may be liable as an employer or in any other capacity;

    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

    (3) To any liability assumed under any contract or agreement.

B. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 5. Premium Audit, subparagraph c. is deleted and replaced with the following:**

    c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. In addition:

    (1) You shall provide us upon our request copies of Certificates of Insurance that you shall require and have obtained from your subcontractors before any work is performed on your behalf. You shall maintain copies of these Certificates during and for up to 5 years after the term of such work.

    (2) The Certificate must evidence coverage and Limits of Insurance equal to or greater than the coverages and Limits of Insurance provided by this policy in force for the term of the work performed for you, unless other terms and limits are shown below:

    Limits of Insurance:

    Coverage equal to the coverages provided by this policy, and

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $ |
| Products/Completed Operations Aggregate Limit | $ |
| Each Occurrence Limit | $ |

U008CP-0702          Includes copyrighted material of ISO Properties, Inc., with its permission          Page 1 of 2

**12/16/2009 03:21 PM**

      (3) We will have the right to adjust the annual premium charged you and use the "total cost" of all work you subcontract as the basis for the additional premium for any subcontractor:

           (a) whose Certificate of Insurance shows Limits of Insurance or coverage less than that required by us or

           (b) for whom you do not have a Certificate.

      (4) Any premium charged shall be paid to us by the first Named Insured within 30 days of the date of invoice.

C.  **SECTION V – DEFINITIONS** is amended and the following added:

    "Total cost" means the combined cost of:

      a.  all labor; plus

      b.  materials and equipment furnished, used or delivered for use in the execution of the work performed; and

      c.  overhead and profit including fees and commissions.

D.  **SECTION V – DEFINITIONS**, subparagraph **19.** is deleted and replaced with the following:

    **19.** "Temporary worker" means any person who is:

      a.  furnished to you to substitute for a permanent "employee";

      b.  a short-term worker; or

      c.  not an "employee" or "volunteer worker".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**12/16/2009 03:21 PM**

COMMERCIAL GENERAL LIABILITY
CG 20 33 10 01

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II – Who Is An Insured** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

**2. Exclusions**

This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**(1)** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**(2)** Supervisory, inspection, architectural or engineering activities.

**b.** "Bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2000

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM AND PUNITIVE DAMAGES**

"Any injury or damage" arising, directly or indirectly, out of:

(1) "Certified acts of terrorism" or "other acts of terrorism", including any action taken in hindering or defending against an actual or expected incident of "certified acts of terrorism" or "other acts of terrorism"; or

(2) Any act of terrorism:

(a) that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(b) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(c) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in (1) or (2) above; including

(3) Damages arising, directly or indirectly, out of (1) or (2) above that are awarded as punitive damages.

B. Exclusion h. under Paragraph 2. Exclusions of SECTION I – COVERAGE C MEDICAL PAYMENTS does not apply.

C. The following definitions are added to the DEFINITIONS Section:

For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

a. The act resulted in aggregate losses in excess of $5 million; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

D. In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**12/16/2009 03:22 PM**

## POLICYHOLDER DISCLOSURE
## NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the act.

You should also know that your policy does <u>not</u> provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy.  <u>Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.</u>

☐ **Coverage election.** I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of $ Not Taken  . I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

### OR

☒ **Coverage rejection.** I hereby elect **not** to purchase coverage for certified acts of terrorism, as defined in section 102(1) of the Act. I understand that I will not have coverage for any losses arising from certified or non-certified acts of terrorism.

| | |
|---|---|
| *"Signature on File"* | **Colony Insurance Company** |
| Policyholder/Applicant's Signature-<br>Must be person authorized to sign for all Insureds | Insurance Company |
| | GL3156900B |
| Print Name<br>TRINTEC CONSTRUCTION, INC. | Policy Number |
| Named Insured | Submission Number<br>09020 |
| Date | Producer Number<br>HULL & COMPANY, INC. |
| | Producer Name<br>P.O. BOX 21567 |
| | Street Address<br>FT. LAUDERDALE, FL 33335 |
| | City, State, Zip |

**The producer shown above is the wholesale insurance broker your insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.**

TRIA2002 Notice-1202



12/16/2009 03:22 PM
08/07/2008 09:15 AM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 10

| POLICY NUMBER

GL3156900B | POLICY CHANGES EFFECTIVE

1/24/2006 | COMPANY
Colony Insurance Company
P.O. Box 85122
Richmond, VA 23285 |
|---|---|---|
| NAMED INSURED
Trintec Construction, Inc.

13091 N.W. 43rd Avenue, Unit A-2
Opa Locka, FL 33054 | | AUTHORIZED REPRESENTATIVE
09020
Hull & company, Inc.
P.O. Box 21567
Ft. Lauderdale, Florida 33335 |
| COVERAGE PARTS AFFECTED | | |

### CHANGES

In consideration of an additonal premium $▒▒▒ (100% Fully Eamed) plus 5% state tax of $12.50 plus .25% of $ ▒▒, it is understood and agreed that the following additional insured is hereby added and made a part this policy as per the attached Form U156:

City of Miami
444 SW 2nd Avenue
Miami, Florida 33130

All other terms and conditions remain unchanged.

_Ricba F. Hull_ 1/24/2006 VL/hc1
Authorized Representative Signature

IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Page 1 of 1   □

12/16/2009 03:22 PM
08/07/2008 09:15 AM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# OWNERS, LESSEES OR CONTRACTORS –
# SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization (Additional Insured):**
City of Miami
444 SW 2nd Avenue
Miami, Florida 33130

A.  **SECTION II – WHO IS AN INSURED** is amended and the following added:

The person or organization (called "additional insured") shown in the Schedule is also an insured but only:

a.  with respect to indirect liability caused by or resulting from your ongoing operations performed for that "additional insured(s)"; and

b.  when you and the person or organization shown in the Schedule have agreed in writing in a contract or agreement that such person or organization be added as an "additional insured" on your policy.

A person's or organization's status as an "additional insured" under this endorsement ends when their contract or agreement with you ends.

B.  **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

This insurance does not apply to:

**Additional Insured Contractual Liability**

"Bodily injury" or "property damage" for which the "additional insured(s)" are obligated to pay damages by reason of the assumption of liability in a contract or agreement.

**Finished Operations or Work**

"Bodily injury" or "property damage":

(1)  occurring after "your work", including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the "additional insured(s)" at the site of the covered operations has been completed; or

(2)  occurring after that portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization.

**Negligence of Additional Insured**

"Bodily injury" or "property damage" directly arising out of or resulting from the negligence of the "additional insured(s)".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U156-0702

Page 1 of 1

**12/16/2009 03:22 PM**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number 9

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL3156900B | 9/1/2005 | Colony Insurance Company<br>P. O. Box 85122<br>Richmond, VA 23285 |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| TRINTEC CONSTRUCTION, INC.<br><br>13091 N.W. 43RD AVENUE, UNIT A-2<br>OPA LOCKA, FL 33054 | 09020<br>HULL & COMPANY, INC.<br>P.O. BOX 21567<br>FT. LAUDERDALE, FL 33335 |

COVERAGE PARTS AFFECTED

### CHANGES

In consideration of no change in premium, it is understood and agreed that the following Additional Insureds are hereby added and made a part of this policy as per the attached Form U156:

Key Colony # 4 Condo Association
Key Colony
Key Biscayne, Florida

All other terms and conditions remain unchanged.

*Richard F. Hull*    9/14/2005 VL/hc1
Authorized Representative Signature

IL 12 01 11 85

Copyright, Insurance Services Office, Inc.,   1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

Page 1 of 1

08/07/2008 09:02 PM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED —
# OWNERS, LESSEES OR CONTRACTORS —
# SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Name of Person or Organization (Additional Insured):

Key Colony Number 4 Condo Association
Key Colony
Key Biscayne, Florida

**A.** **SECTION II – WHO IS AN INSURED** is amended and the following added:

The person or organization (called "additional insured") shown in the Schedule is also an insured but only:

**a.** with respect to indirect liability caused by or resulting from your ongoing operations performed for that "additional insured(s)"; and

**b.** when you and the person or organization shown in the Schedule have agreed in writing in a contract or agreement that such person or organization be added as an "additional insured" on your policy.

A person's or organization's status as an "additional insured" under this endorsement ends when their contract or agreement with you ends.

**B.** **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

This insurance does not apply to:

**Additional Insured Contractual Liability**

"Bodily injury" or "property damage" for which the "additional insured(s)" are obligated to pay damages by reason of the assumption of liability in a contract or agreement.

**Finished Operations or Work**

"Bodily injury" or "property damage":

**(1)** occurring after "your work", including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the "additional insured(s)" at the site of the covered operations has been completed; or

**(2)** occurring after that portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization.

**Negligence of Additional Insured**

"Bodily injury" or "property damage" directly arising out of or resulting from the negligence of the "additional insured(s)".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U156-0702

Page 1 of 1

**12/16/2009 03:22 PM**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number 8

| POLICY NUMBER<br><br>GL3156900B | POLICY CHANGES<br>EFFECTIVE<br><br>9/1/2005 | COMPANY<br>Colony Insurance Company<br>P. O. Box 85122<br>Richmond, VA 23285 |
|---|---|---|
| NAMED INSURED<br>TRINTEC CONSTRUCTION, INC.<br><br>13091 N.W. 43RD AVENUE, UNIT A-2<br>OPA LOCKA, FL 33054 | | AUTHORIZED REPRESENTATIVE<br>09020<br>HULL & COMPANY, INC.<br>P.O. BOX 21567<br>FT. LAUDERDALE, FL 33335 |
| COVERAGE PARTS AFFECTED | | |

### CHANGES

In consideration of a retrun premium of $●●●● plus 5% state tax of $2.50 plus .25% services fee of $.●●, it is understood and agreed that Endorsement #3 is hereby null & void.

All other terms and conditions remain unchanged.

*Richard F. Hull*  9/14/2005 VL/hc1

Authorized Representative Signature

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983          Page 1 of 1   ▢
                        Copyright, ISO Commercial Risk Services, Inc.,  1983

12/16/2009 03:22 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 7

| POLICY NUMBER<br><br>GL3156900B | POLICY CHANGES<br>EFFECTIVE<br><br>7/14/2005 | COMPANY<br>Colony Insurance Company<br>P. O. Box 85122<br>Richmond, VA 23285 |
|---|---|---|
| NAMED INSURED<br>TRINTEC CONSTRUCTION, INC.<br><br>13091 N.W. 43RD AVENUE, UNIT A-2<br>OPA LOCKA, FL 33054 | | AUTHORIZED REPRESENTATIVE<br>09020<br>HULL & COMPANY, INC.<br>P.O. BOX 21567<br>FT. LAUDERDALE, FL 33335 |
| COVERAGE PARTS AFFECTED<br><br> | | |

CHANGES

In consideration of no change in premium it is understood and agreed that the following Additional Insureds are hereby added and made a part of this policy as per the attached Form U156:

Structure Tone, Inc.
& Thier Employees & Officers
770 Broadway, 9th Floor
New York, NY 10003

HSBC Bank
Surfside Branch
9501 Harding Avenue
Surfside, Florida 33154

All other terms and conditions remain unchanged.

*Richard F. Hull*     9/14/2005 VL/hc1
Authorized Representative Signature

**12/16/2009 03:22 PM**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# OWNERS, LESSEES OR CONTRACTORS –
# SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization (Additional Insured):**
Structure Tone, Inc.
& Thier Employees & Officers
770 Broadway, 9th Floor
New York, NY 10003

A. **SECTION II – WHO IS AN INSURED** is amended and the following added:

The person or organization (called "additional insured") shown in the Schedule is also an insured but only:

**a.** with respect to indirect liability caused by or resulting from your ongoing operations performed for that "additional insured(s)"; and

**b.** when you and the person or organization shown in the Schedule have agreed in writing in a contract or agreement that such person or organization be added as an "additional insured" on your policy.

A person's or organization's status as an "additional insured" under this endorsement ends when their contract or agreement with you ends.

B. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

This insurance does not apply to:

**Additional Insured Contractual Liability**

"Bodily injury" or "property damage" for which the "additional insured(s)" are obligated to pay damages by reason of the assumption of liability in a contract or agreement.

**Finished Operations or Work**

"Bodily injury" or "property damage":

**(1)** occurring after "your work", including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the "additional insured(s)" at the site of the covered operations has been completed; or

**(2)** occurring after that portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization.

**Negligence of Additional Insured**

"Bodily injury" or "property damage" directly arising out of or resulting from the negligence of the "additional insured(s)".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U156-0702

Page 1 of 1

12/16/2009 03:22 PM
08/07/2008 09:16 AM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# OWNERS, LESSEES OR CONTRACTORS –
# SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization (Additional Insured):**
HSBC Bank
Surfside Branch
9501 Harding Avenue
Surfside, Florida 33154

A.  **SECTION II – WHO IS AN INSURED** is amended and the following added:

The person or organization (called "additional insured") shown in the Schedule is also an insured but only:

a.  with respect to indirect liability caused by or resulting from your ongoing operations performed for that "additional insured(s)"; and

b.  when you and the person or organization shown in the Schedule have agreed in writing in a contract or agreement that such person or organization be added as an "additional insured" on your policy.

A person's or organization's status as an "additional insured" under this endorsement ends when their contract or agreement with you ends.

B.  **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

This insurance does not apply to:

**Additional Insured Contractual Liability**

"Bodily injury" or "property damage" for which the "additional insured(s)" are obligated to pay damages by reason of the assumption of liability in a contract or agreement.

**Finished Operations or Work**

"Bodily injury" or "property damage":

(1)  occurring after "your work", including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the "additional insured(s)" at the site of the covered operations has been completed; or

(2)  occurring after that portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization.

**Negligence of Additional Insured**

"Bodily injury" or "property damage" directly arising out of or resulting from the negligence of the "additional insured(s)".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U156-0702

Page 1 of 1

**12/16/2009 03:22 PM**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 6

| POLICY NUMBER<br><br>GL3156900B | POLICY CHANGES<br>EFFECTIVE<br><br>7/14/2005 | COMPANY<br>Colony Insurance Company<br>P. O. Box 85122<br>Richmond, VA 23285 |
|---|---|---|
| NAMED INSURED<br>TRINTEC CONSTRUCTION, INC.<br><br>13091 N.W. 43RD AVENUE, UNIT A-2<br>OPA LOCKA, FL 33054 | | AUTHORIZED REPRESENTATIVE<br>09020<br>HULL & COMPANY, INC.<br>P.O. BOX 21567<br>FT. LAUDERDALE, FL 33335 |
| COVERAGE PARTS AFFECTED | | |

**CHANGES**

In consideration of an return premium of $ ▮▮▮▮ plus 5% state tax of $5.00 plus .25% services fee of $.▮, it is understood and agreed that the Endorsement #2 is hereby null & void.

All other terms and conditions remain unchanged.

*Richard F. Hull*      9/14/2005 VL/nc1

Authorized Representative Signature

IL 12 01 11 85        Copyright, Insurance Services Office, Inc.,   1983        Page 1 of 1        □
                      Copyright, ISO Commercial Risk Services, Inc.,   1983